IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IBERIABANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:12-cv-0639-MEF |
| | ) | (WO – Do Not Publish) |
| WILLIAM R. POLK, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## **O R D E R**

Plaintiff Iberiabank ("Iberia") brings suit against Defendants William R. Polk ("W. R. Polk"), Bethany V. Polk ("B. V. Polk"), Polk Family Properties, LLC ("PFP"), and First Community Bank of Central Alabama ("FCB") alleging in its Second Amended Complaint that W. R. Polk fraudulently transferred property to PFP to avoid payment of debts owed to Iberia (Doc. #66).  Iberia also alleges PFP's grant of a mortgage to FCB was a fraudulent transfer and seeks to void FCB's mortgage interest in the subject real property (Doc. #66). Before the Court is FCB's Motion to Dismiss Iberia's Claims Voiding FCB's Mortgage (Doc. #80) and Iberia's Motion for Leave to File a Third Amended Complaint (Doc. #89). For the reasons discussed below, FCB's motion is due to be GRANTED IN PART and DENIED IN PART, and Iberia's motion is due to be DENIED AS MOOT.

1

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332. Additionally, Defendants have not argued that the Court does not have personal jurisdiction over them. Pursuant to 28 U.S.C. § 1391, venue is appropriate in this district.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiff's allegations as true and reads them in the light most favorable to the plaintiff. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted). Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully." *Id.* While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation and citations omitted). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Id.*

Courts are also not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. STATEMENT OF FACTS

Since this case is before the Court on a Motion to Dismiss, the Court accepts the following allegations in Iberia's Second Amended Complaint as true:

On August 17, 2007, B&B Properties, LLC ("B&B") entered into a note with Iberia for the principal sum of $850,000, which was secured by a mortgage on property located in Autauga County, Alabama. W. R. Polk was the managing member of B&B and executed a personal guaranty on the note in favor of Iberia. B&B defaulted on the note, and W. R. Polk defaulted on his obligation under the personal guaranty. After foreclosure of the Autauga County property, W. R. Polk remained liable for the deficiency amount under the note. On September 26, 2007, W. R. Polk entered into a separate note for the principal sum of $100,150. He defaulted on this note as well.

While these debts were outstanding, W. R. Polk transferred a parcel of real property in Tallapoosa County, Alabama and certain personal property to PFP on December 31, 2008, the day on which PFP was formed. The members of PFP were W. R. Polk, his wife, B. V. Polk, and the trusts of his three children. W. R. Polk held a 95.5% interest in both classes of membership of PFP upon its creation and also held the vast majority of PFP's assets, including the property he had transferred to PFP. W. R. Polk was also the member-manager of PFP and its registered agent.

After the transfer of real and personal property to PFP, PFP mortgaged the same real

property to FCB in March 2009.  In June 2009, W. R. Polk represented to Iberia that he owned most, if not all, of the property transferred to PFP in a Personal Financial Statement.  In 2010, Iberia filed suit against W. R. Polk in the Circuit Court of Autauga County, Alabama and obtained judgments against W. R. Polk for $611,045.39 and against B&B for $504,497.12 for their previous defaults.  Finally, on June 22, 2012, B. V. Polk received "all marital interest in the Polk Family Property Trust" pursuant to a divorce decree.  As a result, W. R. Polk now contends that he no longer holds any interest in PFP, and B. V. Polk contends that she currently holds the controlling interest in PFP.  The personal and real property transferred to PFP by W. R. Polk is still owned by PFP.

## IV. DISCUSSION

Iberia brings two counts seeking relief from FCB for violations of the Alabama Fraudulent Transfer Act ("the Act").[1]  *See* Ala. Code §§ 8-9A-1 *et seq.*.  Count 1 asserts a fraudulent transfer under § 8-9A-4, and Count 2 asserts the same under § 8-9A-5.[2]  Iberia seeks to have this Court declare FCB's mortgage interest in PFP's property void due to the alleged fraudulent transfer.  (Doc. #66.)  FCB has moved to dismiss Iberia's claims voiding FCB's mortgage interests under Rule 12(b)(6) (Doc. #80).  FCB further argues that claims for fraudulent transfer under certain portions of the Act are time-barred and that Iberia has

---

[1] Iberia asserts four counts against all Defendants, but only the first two seek relief from FCB.

[2] § 8-9A-4(a) prohibits a debtor from transferring property with the actual intent to defraud a creditor.  § 8-9A-4(c) prohibits a debtor from transferring property without receiving reasonably equivalent value in exchange.  § 8-9A-5 prohibits transfers of property by debtors who are insolvent or about to become insolvent.

4

failed to plead its remaining fraudulent transfer claims with sufficient specificity. The Court addresses the statute of limitations issue first.

**A.     Statute of Limitations**

A statute of limitations defense may be raised on a motion to dismiss for failure to state a claim when the complaint shows on its face that the limitations period has run. *See AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982) (citations omitted). Iberia asserts fraudulent transfer claims under § 8-9A-4 and § 8-9A-5 of the Act. (Doc. #66.) From the face of the Second Amended Complaint, the allegedly fraudulent transfer of a mortgage interest on the real property of PFP to FCB occurred in March 2009. The Second Amended Complaint was filed on July 31, 2013.[3] Thus, over four years passed from the time of the alleged fraudulent transfer to the filing of the Second Amended Complaint.

The statute of limitations for claims made under § 8-9A-4(a) is ten years after a transfer of real property, and six years after the transfer of personal property. Ala. Code § 8-9A-9(1)–(2). Since the claims under § 8-9A-4(a) against FCB involve real property, Iberia's claims are well within the ten-year statute of limitations and are not time-barred. The statute of limitations for claims made under § 8-9A-4(c) is four years after the transfer when the action is brought by a creditor whose claim arose before the transfer was made, and

---

[3] FCB was named as a party only after this Court granted Iberia leave to file a Second Amended Complaint. Since the claims against FCB do not relate back to the claims against the Polk Defendants, the amended pleading filed on July 31, 2013, is the time at which the claims against FCB were first made.

5

one year after the transfer when the action is brought by a creditor whose claim arose after the transfer was made. Ala. Code § 8-9A-9(3)–(4). Since Iberia alleges it was a creditor prior to the March 2009 mortgage, the four year period applies to its claims under § 8-9A-4(c). These claims are time-barred since more than four years passed from the March 2009 transfer until the July 2013 Second Amended Complaint. Therefore, FCB's motion to dismiss Iberia's claims voiding its mortgage under § 8-9A-4(c) as alleged in Count 1 is due to be GRANTED.

The statute of limitations for claims under § 8-9A-5(a) is four years after the transfer when the action is brought by a creditor whose claim arose before the transfer was made, and one year after the transfer for a creditor whose claim arose after the transfer was made. Ala. Code § 8-9A-9(3). Again, the four-year limit applies and bars Iberia from asserting claims under § 8-9A-5(a). The statute of limitations for claims under § 8-9A-5(b) is within one year after the transfer was made. Ala. Code § 8-9A-9(5). Iberia is thus also time-barred with respect to this claim. Since Count 2 consists entirely of claims under § 8-9A-5, and Iberia's claims under both subsections are time-barred, FCB's motion to dismiss Iberia's claims voiding its mortgage under § 8-9A-5 as alleged in Count 2 is GRANTED.

**B.    12(b)(6) Failure to State a Claim**

The surviving claims against FCB are under § 8-9A-4(a) as alleged in Count 1 of Iberia's Second Amended Complaint. (Doc. #66.) Under this subsection of the Act, a "transfer made by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor." Ala. Code § 8-9A-

4(a). FCB argues that Iberia's claims are not adequately plead because Iberia does not allege that PFP was its debtor and does not allege that the mortgage between PFP and FCB was fraudulent. In addition, FCB argues that Iberia failed to plead that FCB was not a transferee who took the mortgage in good faith. (Doc. #80.) The Court will consider the latter argument first.

Under the Act, a transfer made in violation of § 8-9A-4(a) is not voidable "against any subsequent transferee or obligee who took in good faith." Ala. Code § 8-9A-8(a). FCB argues that Iberia fails to state a claim because Iberia does not allege FCB is not a good faith transferee who took in good faith. (Doc. #80, at 8–10.) Whether a party is a bona fide purchaser for value is an affirmative defense, and there is no duty for a plaintiff "pleading a fraudulent conveyance[] to anticipate the defense and to affirmatively plead and prove that all subsequent purchasers are not bona fide purchasers." *Yeargin v. Donnelly*, 296 So. 2d 144, 147 (Ala. 1974). The issue of whether FCB had constructive or inquiry notice that PFP was seeking to avoid creditors, and thus was not a good faith transferee, cannot be resolved at the motion to dismiss stage. *See, e.g.*, *United States v. Petters*, 857 F. Supp. 2d 841, 847–48 (D. Minn. 2012) (stating bona fide purchaser for value status cannot be determined at motion to dismiss); *West Charleston Lofts I, LLC v. R&O Constr. Co.*, 915 F. Supp. 2d 1191, 1195 (D. Nev. 2013) (stating bona fide purchaser status is an affirmative defense on which party asserting status bears burden of proof and plaintiff need not plead lack of such status in complaint). Therefore, Iberia does not fail to state a claim for failing to plead that FCB was not a bona fide transferee.

7

FCB's remaining arguments are that Iberia fails to allege PFP, as distinct from W. R. Polk, is a debtor of Iberia and that Iberia fails to allege the mortgage interest from PFP to FCB was a fraudulent transfer. To begin with FCB's first argument, it is true that § 8-9A-4 prohibits only fraudulent conveyances "made by a debtor." *Folmar & Assocs., LLP v. Holberg*, 776 So. 2d 112, 117 (Ala. 2000). But the question is whether PFP is a third-party transferor completely distinct from W. R. Polk, who is indisputably Iberia's debtor, or whether PFP is so closely related to W. R. Polk as to also make it Iberia's debtor.

In *Folmar*, the debtor's ex-wife alleged the debtor's partnership was fraudulently transferring assets to the debtor's new wife. 776 So. 2d at 117. The Alabama Supreme Court held the ex-wife had no cause of action against the debtor's partnership and current wife, even if they were engaged in a conspiracy to defraud her, because they were not debtors to the ex-wife as required by the statute. *Id.* at 118. By contrast, in *Thompson Properties v. Birmingham Hide & Tallow Co.*, the Act was held to apply to a transfer from a corporation because the corporation was the "alter ego and [a] mere instrumentality" of the debtor. 839 So. 2d 629, 631 (Ala. 2002). The *Thompson* court qualified *Folmar*'s requirement that the transfer be "made by a debtor" on the grounds that the debtor and his corporation could be considered "one and the same" at the time of the transfer. *Id*. at 634. The debtor in *Thompson* was the corporation's president and sole shareholder, and there was proof that the debtor retained an "undocumented interest" in the property transferred by the corporation for which the debtor was later paid. *Id.* at 630, 634. Thus, whether a debtor and his or her corporation are "one and the same" for purposes of the Act depends on the extent to which

8

the debtor controls the actions of the corporation. *See S.J. Holding Co. v. Kadco, Inc.*, 874 So. 2d 1036 (Ala. 2003) (holding that receiver/board member of corporation who transferred property, as distinct from the debtor/sole shareholder of corporation, was not a "debtor" for purposes of the Act and thus transaction was not voidable as against the transferee).

Thus, the issue is whether Iberia has alleged sufficient facts to create a plausible inference that PFP was "one and the same" as the debtor, W. R. Polk, at the time of PFP's mortgage to FCB. Iberia alleges in its Second Amended Complaint that W. R. Polk transferred his ownership in a number of properties on the same day that PFP, "Polk Family Properties, LLC," was created. (Doc. #66, ¶ 10.) The members of PFP were W. R. Polk, his wife, B. V. Polk, and the trusts of his three children. (Doc. #66, ¶ 11.) W. R. Polk maintained a 95.5% interest in both classes of membership created under the PFP Operating Agreement and contributed the vast majority of PFP's assets. (Doc. #66, ¶ 11.) W. R. Polk was also the member-manager of PFP and its registered agent. (Doc. #66, ¶ 11.) The Court finds these allegations sufficient to create a plausible inference that W. R. Polk maintained enough control over PFP for PFP to be considered "one and the same" as W. R. Polk for purposes of the Act. W. R. Polk resembles the president and sole shareholder debtor in *Thompson* in that he maintained control of the subject property both before and after the formation of the corporation through his near-complete control of the corporation. 839 So. 2d at 630, 634. By contrast the receiver and chairman of the board in *Kadco* did not control the corporation by virtue of his ownership interest, but was court-appointed as a receiver and transferred the corporation's assets in that capacity. 874 So. 2d at 1046. Since Iberia has

9

plead sufficient facts to create a plausible inference that W. R. Polk and PFP are "one and the same" for purposes of the Act, a transfer of property by PFP would be a transfer "made by a debtor" as required by § 8-9A-4.

FCB's final argument is that Iberia fails to state a claim for fraudulent transfer because Iberia does not allege "that the mortgage between PFP LLC and FCB was fraudulent" or that "FCB or PFP engaged in fraudulent conduct in entering into the mortgage in 2009." (Doc. #80, at 7.) Iberia's only remaining claim against FCB is under § 8-9A-4(a), which involves actual, as opposed to constructive, fraud.[4] This section of the Act states a transfer is fraudulent if "the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor." § 8-9A-4(a). Subsection (b) lists factors for determining actual intent, such as whether the transfer was to an insider, whether the transfer was of substantially all of the debtor's assets, and whether the debtor was insolvent or became insolvent shortly after the transaction. § 8-9A-4(b); *see also McPherson Oil Co. v. Massey*, 643 So. 2d 595, 596 (Ala. 1994). None of these factors requires, or even suggests, that the transferee must engage in wrongdoing or fraudulent conduct. Rather, these "badges of fraud" provide circumstantial evidence of actual intent to defraud on the part of the debtor. The transferee or, in this case, mortgagee, need not actively participate in the fraud.

---

[4] § 8-9A-4(c) deals with constructive fraud, but claims under this portion of the Act are barred on statute of limitations grounds. *See* Ala Code § 8-9A-4 cmt. 1; *see also Cox v. Hughes*, 781 So. 2d 197, 206 n. 3 (Ala. 2000) (See, J., concurring) (noting that the Act divides the pre-existing distinction between actual and constructive fraud into § 8-9A-4(a) and § 8-9A-4(c) of the Act, respectively).

For instance, in *Varner v. Varner,* the court upheld a finding that the husband fraudulently transferred assets from a corporation in which his wife held a 50% share shortly before their divorce because "[r]ecord evidence supports a conclusion that *the husband's clear intent in these transactions was to avoid making his court-ordered obligations and to limit his potential liability to the wife in the divorce settlement.*" 662 So. 2d 273, 276 (Ala. Civ. App. 1994) (emphasis added).  Likewise, in *Baggett v. Baggett*, the court upheld a finding of a fraudulent transfer by an ex-husband required to pay alimony because, although the ex-husband may have been susceptible to financial scams due to declining mental faculties, "he was capable of understanding that, if he transferred certain assets to his son Keith, he would be able to reduce or eliminate his periodic-alimony obligation to his former wife." 870 So. 2d 735, 740 (Ala. Civ. App. 2003).  These cases demonstrate that the relevant inquiry for actual fraud is the *debtor's* mental state as determined by the presence or absence of the "badges of fraud" listed in § 8-9A-4(b).[5]

The Court finds that Iberia's Second Amended Complaint contains sufficient allegations to create a plausible inference that W. R. Polk/PFP's mortgage to FCB was a

---

[5] It is important to avoid the confusion created on this issue by cases applying Alabama's former fraudulent transfer statute, which was replaced by the Act.  For instance, Iberia cites *J.C. Jacobs Banking Co. v. Campbell*, 406 So. 2d 834 (Ala. 1981), but this contains a statement of law that is no longer correct.  *Campbell* states a plaintiff seeking to void a transaction "must show the mutual fraudulent intent of the parties to the transaction.  Proof of the grantor's intent alone is insufficient to cause the conveyance to be set aside." 406 So. 2d at 843.  This is no longer the law as the text of the statute itself makes clear as well as the cases cited in this paragraph.

fraudulent transfer.[6]  Several of the badges of fraud listed in § 8-9A-4(b) are present based on the allegations in the Second Amended Complaint.  After the grant of the mortgage by PFP to FCB, W. R. Polk/PFP retained possession or control of the property transferred.[7]  *See* § 8-9A-4(b)(2).  The facts alleged in ¶ 17 of the Second Amended Complaint plausibly allege that the value of the consideration received by PFP was reasonably equivalent to the value of the asset transferred.  *See* § 8-9A-4(b)(8).  The grant of the mortgage interest occurred after W. R. Polk/PFP had incurred debt with Iberia and shortly before they became judgment creditors of Iberia based on the 2010 state court proceedings.  *See* § 8-9A-4(b)(10).  In sum, W. R. Polk/PFP mortgaged real property that was reported to Iberia on a Personal Financial Statement in June of 2009 with the knowledge that they owed Iberia substantial sums of money.  This is sufficient to plausibly allege a fraudulent transfer because W. R. Polk/PFP's grant of a mortgage interest to FCB with the knowledge of Iberia's prior claims reveals an "actual intent to hinder, delay, or defraud" Iberia.  *See* § 8-9A-4(a).

Since the Court finds Iberia has alleged sufficient facts to show that W. R. Polk and PFP were one and the same for the purposes of the Act and that PFP's grant of a mortgage to FCB was a fraudulent transfer, FCB's Motion to Dismiss Iberia's Claims Voiding its Mortgage under § 8-9A-4(a) is due to be DENIED.  While FCB's mortgage may not be voidable because FCB is a transferee who took in good faith pursuant to § 8-9A-8(a), this

---

[6] For the purposes of this analysis, the Court incorporates its previous conclusion that Iberia plausibly alleges that W. R. Polk and PFP are one and the same for the purposes of the Act.

[7] The grant of a mortgage is a "transfer" as defined by the Act.  *See* § 8-9A-1(13).

defense must be resolved at the summary judgment or trial stage and not on a motion to dismiss as discussed above.

**C.     Iberia's Motion to Allow Third Amended Complaint**

Iberia moved for leave to file a third amended complaint to correct potential pleading deficiencies on its claims against FCB (Doc. #89).  Because the Court finds that Iberia's Second Amended Complaint alleges sufficient facts to state a claim for fraudulent transfer of a mortgage from PFP to FCB, Iberia's motion is due to be DENIED AS MOOT.

## V. CONCLUSION

Accordingly, it is ORDERED as follows:

1.     FCB's Motion to Dismiss Claims Voiding Mortgage (Doc. #80) is GRANTED as to Iberia's claims against FCB under § 8-9A-4(c) in Count 1 and as to all of Iberia's claims against FCB in Count 2, and these claims are DISMISSED WITH PREJUDICE.

2.     FCB's Motion to Dismiss Claims Voiding Mortgage (Doc. #80) is DENIED as to Iberia's claims against FCB under § 8-9A-4(a) in Count 1.

3.     Iberia's Motion to Allow Third Amended Complaint (Doc. #89) is DENIED AS MOOT.

DONE this the 18th day of October, 2013.

      /s/   Mark E. Fuller     
UNITED STATES DISTRICT JUDGE